UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ORESTES CABRERE ALFONSO,
A-074-124-585,

              Petitioner,

    v.

CHRISTOPHER CHESNUT, et. al.,

              Respondents.

No.  1:26-cv-00113-DC-DMC-HC

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondents filed an answer, ECF No. 10, Petitioner filed a reply, ECF No. 11.

**I. BACKGROUND**

Petitioner contends he was born in Cuba and was ordered removed on June 6, 2024. See ECF No. 1, pg. 2. According to Petitioner, he was incarcerated beginning May 31, 2008, and was immediately detained by immigration authorities following his release from federal prison on February 9, 2024. See id. Petitioner asserts that he "[has] not been able to practice [his] religious [sic] or have [his] religious diet," and has been transferred between four detention facilities in the past 22 months of detention. Id. at 3. Petitioner raises three claims: (1) that his prolonged detention violates Due Process because there is no significant likelihood that

1

Petitioner will be removed in the reasonably foreseeable future; (2) that Respondents' current policy around third country removal violates the Fifth Amendment to the Constitution, 8 U.S.C. § 1231, the Convention Against Torture (CAT), and its implementing regulations, and the Administrative Procedures Act; and (3) "punitive third-country banishment" violates the Fifth and Eighth Amendments. Id. at 16-19.

As to the first claim, Petitioner contends that, under Zadvydas v. Davis, 533 U.S. 678 (2001), after the presumptively reasonable six month period for detention, a "non-citizen is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably forseeable [sic] future.'" Id. at 16 (quoting Zadvydas, 533 U.S. at 701). According to Petitioner, his home country of Cuba will not accept Petitioner. Id. at 2.  Next, Petitioner argues that the "current procedures for removal of detainees to third countries [] violates the Fifth Amendment, the INA, the CAT, and implementing regulations, all of which mandate meaningful notice and opportunity to respond to any attempt to remove Petitioner to a third country in reopened removal proceedings." Id. at 17. Thus, Petitioner requests that, if Respondents seek to remove Petitioner to a third country (i.e. not Cuba), Petitioner be provided "notice and opportunity to respond and contest that removal if it gives rise to a fear of persecution or torture in that country." Id. at 18.

Finally, Petitioner argues that "Petitioner has completed any sentence imposed for a criminal conviction," and therefore, "Respondents are not authorized to punish Petitioner as part of immigration proceedings." Id. at 19. Petitioner contends that Respondents current "third-country removal program is punitive in nature and execution" because the U.S. "government has arranged for third countries to receive deportees and imprison them on arrival . . . [the U.S. government] has selected countries notorious for human rights abuses and instability for third-country removal arrangements." Id. Thus, Petitioner requests that Respondents not be permitted "to remove Petitioner to a third country under their punitive banishment policy and practices." Id.

Respondents' answer provides a factual background on Petitioner's conviction, two paragraphs on the legal framework, and a five-sentence argument, as follows:

/ / /

2

> Petitioner's detention is lawful. As a removable alien with a final order of removal, Petitioner is subject to detention under 8 U.S.C. § 1231(a)(6). Petitioner was ordered removed in June 2024, which was affirmed on appeal in October 2024. Although Petitioner has been detained for longer than the 90-day statutory removal period and the presumptively reasonable six-month detention period, his continued detention is lawful as his criminal history renders him a risk to the community under 8 U.S.C. § 1231(a)(6). See Exhs. 1, 16. Moreover, Petitioner has not demonstrated that "there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

ECF No. 10, pgs. 2-3.

Attached to the answer as exhibits are: Petitioner's March 2009 guilty judgement for one count of conspiracy to distribute and one count of possession with intent to distribute, ECF No. 10-1, pgs. 28, Petitioner's notice of appeal of his conviction, id. at 10, Eleventh Circuit Court of Appeals denial of Petitioner's appeal, id. at 12-18, U.S. District Court denial of Petitioner's petition for writ of habeas corpus for his criminal conviction, id. at 20, U.S. District Court denial order for Petitioner's petition for writ of habeas corpus for his criminal conviction, id. at 22-23, U.S. District Court grant of Petitioner's motion for sentence reduction for Petitioner's criminal conviction, id. at 25, U.S. District Court denial of Petitioner's motion for compassionate release for Petitioner's criminal conviction, id. at 27-33, U.S. District Court denial order of Petitioner's motion for compassionate release for Petitioner's criminal conviction, id. at 35-38, Eleventh Circuit Court of Appeals denial of Petitioner's motion for compassionate release for Petitioner's criminal conviction, id. at 40-45, Petitioner's February 27, 2024, notice to appear, id. at 47-50, Petitioner's June 6, 2024, removal order, id. at 52-55, receipt for Petitioner's appeal of his removal order, id. at 57-58, Board of Immigration Appeals (BIA) October 31, 2024, order affirming Petitioner's removal order, id. at 60-61, January 28, 2025, BIA filing receipt, id. at 63, BIA October 10, 2025, denial of Petitioner's motion to reconsider as untimely, id. at 65-66, and Petitioner's "RAP Sheet," id. at 68-78.

In Petitioner's reply, Petitioner reiterates his argument that Petitioner "has been significantly more than six months." See ECF No. 11. Petitioner additionally asserts that, in the petition, Petitioner "showed that his removal in the reasonably foreseeable future is unlikely," and Respondents did not "[meet] its burden of showing [Petitioner's] removal is likely to occur in the reasonably foreseeable future." Id. at 3. Finally, Petitioner contends that Respondents' "current

third country removal process violates the Fifth Amendment to the Constitution, 8 U.S.C. § 1231, the Convention Against Torture, and its implementing regulations, and the Administrative Procedures Act." Id. at 4.

## II. DISCUSSION

The undersigned finds that Petitioner has been detained since June 2024 with an order of removal was affirmed October 2024 and Petitioner has established there is no significant likelihood of his removal within the reasonably foreseeable future because Cuba will not accept him. Given Respondents do not provide any facts or argument to challenge this claim, the undersigned finds that Petitioner's continued detention violates the presumptively reasonable six-month period of post-removal detention established in Zadvydas and therefore will recommend that Respondents be ordered to provide this Court with proof, within 30 days of the District Judge's order, that Petitioner was provided notice of where he will be removed, the necessary procedural safeguards as to third country removal, if applicable and as discussed in the following section, and that Respondents have requested the required travel documents to effectuate Petitioner's removal. The undersigned will additionally recommend that if Respondents are unable or unwilling to provide such evidence to this Court within 30 days, Respondents be ordered to immediately release Petitioner.

As to third country removal, the undersigned finds that such removal, absent procedural safeguards, violates Due Process, and therefore the undersigned will recommend that, if Respondents seek to remove Petitioner to a third country, Respondents and their officers, agents, servants, employees, and persons acting on their behalf in concert or in participation with them, be enjoined from removing Petitioner via third-country deportation to any country, without providing Petitioner and his counsel meaningful notice and opportunity to assert a fear-based claim for relief from removal: (1) A minimum of ten (10) days to raise a fear-based claim for relief from removal to the identified country; and (2) if Petitioner does assert a fear-based claim for relief from removal, Petitioner may not be removed to the third country without first providing him a meaningful opportunity to be heard on his fear-based claim before an

4

immigration judge in compliance with due process.

As a preliminary matter, the undersigned notes that much of Respondents' answer relates to Petitioner's criminal conviction. Respondents argue that "Petitioner has remained detained since then as he is considered a risk to the community due to his criminal history." ECF No. 10, pg. 1. While Petitioner's criminal conviction is relevant to Petitioner's detention and removal, Petitioner here is not challenging his conviction nor making any argument relating to his conviction. Petitioner's claim that his due process rights were violated and that, pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001), his detention is not justified does not require this Court to consider the nature of Petitioner's conviction. Respondents provide no statutory or case authority to show consideration of Petitioner's conviction is necessary under Zadvydas.

###    A.    Likelihood of Removal

When the Government wants to remove a noncitizen,[1] the normal path is through removal proceedings, which require an evidentiary hearing before an immigration judge. 8 U.S.C. § 1229(a). In the removal proceeding, the Immigration Judge determines both whether a noncitizen may be removed and to what country or countries he may be removed. 8 C.F.R. § 1240.12(d) ("When a respondent is ordered removed from the United States, the immigration judge shall identify a country, or countries in the alternative, to which the alien's removal may in the first instance be made, pursuant to [8 U.S.C. § 1231(b)(2)].") Section 1231(b)(2) requires that the immigration judge prioritize removal to countries as follows:

> (1) An alien shall be removed to the country of his choice (subparagraphs (A) to (C)), unless a condition eliminating that command is satisfied; (2) otherwise he shall be removed to the country of which he is a citizen (subparagraph (D)), unless a condition eliminating that command is satisfied; (3) otherwise he shall be removed to a country with which he has a lesser connection (subparagraph (E), clauses (i) to (vi), including the country of his birth (clause (iv))); or (4) if that is "impracticable, inadvisable, or impossible," he shall be removed to another country whose government will accept him (subparagraph (E), clause (vii)).
>
> Jama v. Immigr. and Customs Enf't, 543 U.S. 335, 341 (2005) (citing 8 U.S.C. § 1231(b)(2)).

///

---

[1] The court prefers the term "noncitizen" to "alien." Because the regulatory language at issue frequently uses the term "alien," the court will use the terms interchangeably in this order.

5

If the U.S. Department of Homeland Security (DHS) is "unable to remove the alien to the specified or alternative country or countries, the order of the immigration judge does not limit [DHS's authority] to remove the alien to any other country as permitted by [8 U.S.C. § 1231(b)]." 8 C.F.R. § 1240.12(d). Removal to countries identified outside of removal proceedings are referred to as "third country removals." Notwithstanding DHS's authority to effectuate third country removals, noncitizens may not be removed to countries where, as potentially relevant here, their "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion," (referred to as "withholding of removal"), or where "it is more likely than not that [the noncitizen] would be tortured if removed to the proposed country of removal" (referred to as the "Convention Against Torture" (CAT)). 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16. Both withholding of removal and the CAT provide mandatory protections from removal to the country or countries where the noncitizen is more than likely to be persecuted or tortured. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16.2 While DHS has the authority to remove a noncitizen to a country not identified in the final removal order, there is no statute or regulation providing a specific procedure to effectuate such a third country removal. See Aden v. Nielsen, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019).

After a noncitizen is ordered removed, ICE "shall remove the alien from the United States within a period of 90 days . . . ." (the "removal period"). 8 U.S.C. § 1231(a)(1)(A). The removal period begins, as relevant here, on the "date the order of removal becomes administratively final." Id. § 1231(a)(1)(B)(i). ICE is required to detain the noncitizen during the removal period. § 1231(a)(2). If the noncitizen is not removed during the removal period, ICE "may" continue to detain the noncitizen after the removal period if he falls into certain categories, including that he entered "the United States without being admitted or paroled," or arrived "in the United States at any time or place other than as designated by the Attorney General."  §§ 1231(a)(6), 1182(a)(6)(A)(i). Although there is no explicit statutory limit to the period for which a noncitizen may be detained following the removal period, in Zadvydas the Supreme Court noted that a "statute permitting indefinite detention of an alien would raise a serious constitutional

problem" under the Fifth Amendment Due Process Clause. Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Accordingly, the Supreme Court held that after a presumptively reasonable six-month period of post-removal period detention,

> once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

> Id. at 701.

Here, Petitioner contends that his continued detention is unconstitutional under the standard established in Zadvydas because his removal is not reasonably foreseeable. ECF No. 1, pgs. 16-17 and No. 11, pgs. 2-3. Petitioner contends he has been detained since February 9, 2024, and Cuba will not accept Petitioner. See ECF No. 1, pg. 2. According to Petitioner and the documents provided by Respondents, Petitioner was ordered removed to Cuba in June 2024, Petitioner appealed that order of removal, and it was affirmed in October 2024. See ECF No. 11, pg. 2; ECF No. 10-1, pg. 54. Petitioner therefore seeks an order requiring Petitioner's immediate release subject to "appropriate conditions of supervision set forth in 8 C.F.R. § 241.5." ECF No. 11, pg. 5.  Petitioner argues that he must be released under Zadvydas because there is no significant likelihood that he will be removed in the reasonably foreseeable future. Id. at 2-3. Petitioner contends that Respondents' answer "is devoid of any argument that [Petitioner's] removal in the reasonably foreseeable future is likely." Id. at 3. Finally, Petitioner argues that, should a third country for removal be identified, Petitioner seeks "adequate notice and process" prior to such removal. Id. at 4.

In their opposition, Respondents argue that Petitioner "has not demonstrated that there is no significant likelihood of removal in the reasonably foreseeable future." ECF No. 10, pg. 4. Respondents contend that Petitioner's detention "is lawful as his criminal history renders him a risk to the community under 8 U.S.C. § 1231(a)(6)." ECF No. 10, pg. 3. According to the documents provided by Respondents, Petitioner's order of removal became final on October 31,

7

2024, when the BIA affirmed the order. See ECF No. 11 at 60-61; 8 CFR § 1241.1 (an order of removal becomes final "(a) Upon dismissal of an appeal by the Board of Immigration Appeals").

The undersigned finds that Petitioner has demonstrated "good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future" because, according to Petitioner, Cuba will not accept Petitioner. Respondents do not refute that claim nor do Respondents identify any third-country eligible to receive Petitioner upon removal. See ECF No. 10. Indeed, in Respondents' five sentence argument, Respondents rely on the contention that *Petitioner* failed to demonstrate there is "'no significant likelihood of removal in the reasonably foreseeable future.'" Id. pg. 3 (quoting Zadvydas, 533 U.S. at 701).

Respondents cite the Ninth Circuit decision in Prieto-Romero v. Clark, to support their claim that Petitioner bears the burden of showing he is "'stuck in a 'removable-but-unremovable limbo,' as the petitioners in Zadvydas were.' (citation omitted). That is, the alien must show he "is unremovable because the destination country will not accept him or his removal is barred by our own laws." ECF No. 10, pg. 3 (quoting Prieto-Romero v. Clark 534 F.3d 1053, 1059 (9th Cir. 2008)). However, this mischaracterizes the holding in Prieto-Romero v. Clark and the undersigned additionally finds the facts here are distinguishable. There, the Ninth Circuit concluded

> Although his removal has certainly been delayed by his pursuit of judicial review of his administratively final removal order, he is not stuck in a "removable-but-unremovable limbo," as the petitioners in Zadvydas were. See Jama v. Immigration and Customs Enforcement, 543 U.S. 335, 347, 125 S. Ct. 694, 160 L. Ed. 2d 708 (2005). Here there is no evidence that Prieto-Romero is unremovable because the destination country will not accept him or his removal is barred by our own laws. Cf. Zadvydas, 533 U.S. at 697. To the contrary, the government introduced evidence showing that repatriations to Prieto-Romero's country of origin, Mexico, are routine and that the government stands ready to remove Prieto-Romero as soon as judicial review is complete. Prieto-Romero does not dispute this evidence . . .

> Prieto-Romero, 534 F.3d at 1063.

Thus, the Ninth Circuit never held the burden is on the petitioner to establish they are unremovable, but instead found the facts did not support such conclusion. Further, the Ninth Circuit explicitly stated that the *government* there provided evidence that Prieto-Romero's home country accepts repatriation and that the government was in the position to remove Prieto-Romero

8

upon completion of judicial review. Here, Petitioner's order of removal is not undergoing judicial review nor do Respondents provide any explanation for the delay in Petitioner's removal.

Further, Prieto-Romero supports Petitioner's claim that Cuba would not accept Petitioner because the Ninth Circuit there distinguished a Supreme Court case, concluding: "in Clark, an alien's removal to Cuba was not reasonably foreseeable when the government conceded 'that it is no longer even involved in repatriation negotiations with Cuba.'" Id. (quoting Clark v. Suarez Martinez, 543 U.S. 371, 386 (2005)). The caselaw Respondents rely on support Petitioner's claim that Cuba would not accept him and Respondents failed to provide any evidence to challenge that claim, despite the opportunity. Respondents were aware of Petitioner's claims that he has been detained beyond the presumptively reasonable six months established in Zadvydas, that Cuba would not accept him, and therefore his removal is not likely in the reasonably foreseeable future but have made no effort to refute these claims. Thus, the undersigned therefore finds that Petitioner has "provide[d] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," but Respondents do not provide any "evidence sufficient to rebut that showing."  Thus, in accordance with the Supreme Court holding in Zadvydas v. Davis, 533 U.S. 678 (2001), the undersigned finds Petitioner's prolonged detention violates due process.

However, in consideration of Petitioner's criminal conviction and that he was immediately detained following his release from incarceration, the undersigned will not recommend immediate release. The undersigned will instead recommend that Respondents be ordered to provide this Court, within 30 days of the District Judge's order, with proof that Petitioner was provided notice of where he will be removed, the necessary procedural safeguards as to third country removal, if applicable, as discussed in the following section, and that Respondents have requested the required travel documents to effectuate Petitioner's removal. The undersigned will additionally recommend that if Respondents fail to provide such evidence to this Court within 30 days, Respondents be ordered to immediately release Petitioner.

///

///

**B.    Third Country Removal**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law. U.S. Const. amend. V. "It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." Trump v. J.G.G., 604 U.S. 670, 673 (2025) (citation omitted); see also Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

Here, Petitioner contends the DHS Third Country Removal Policy violates his Due Process rights guaranteed by the Fifth Amendment. See ECF No. 1, pgs. 18-19. Additionally, Petitioner asserts that ICE's current procedures relating to the removal of persons to third countries violates due process, 8 U.S.C. § 1231, implementing regulations, the CAT, and the APA, and that the program is punitive in violation of the Eighth Amendment and due process. See ECF No. 1, pgs. 17-19. The petition alleges that ICE's current third-country removal procedures provide "that ICE may deport [a] person without any procedures for notice or an opportunity to be heard if the State Department confirms that it has received diplomatic assurances that individuals will not be persecuted or tortured." Id. at 6 (citing Y.T.D. v. Andrews, No. 1:25-cv-1100 JLT SKO, 2025 WL 2675760, at *9 (E.D. Cal. Sept. 18, 2025)). Where no diplomatic assurances are received, officers are instructed to generally wait at least twenty-four hours after serving a notice of removal before effectuating removal but that in exigent circumstances a removal order can be effectuated in as little as six hours after notice if the individual "is provided reasonable means and opportunity to speak with an attorney prior to removal." Id. (citing Y.T.D., 2025 WL 2675760, at *9-10. Officers are "instruct[ed] *not* to ask whether the individual is afraid of removal to that country" and removal is allowed to proceed so long as "the noncitizen 'does not affirmatively state a fear of persecution or torture if removed to the country of removal listed on the Notice of Removal within 24 hours.'" Id. (citing Y.T.D., 2025 WL 2675760, at *10).

/ / /

10

Respondents do not address this claim. See ECF No. 10. Based on Petitioner's uncontested allegations, the undersigned finds that, to the extent the government deliberately seeks to remove noncitizens to countries where they will be imprisoned upon arrival, the government's third-country removal policy is punitive and violates due process. See Baltodano v. Bondi, No. C25-1958 RSL, 2025 WL 3484769, at *7-10 ("the Government's practice of third-country removal paired with imprisonment is intended to be punitive and thus violates due process under Wong Wing, 163 U.S. 228 at 236-38 (1896), and Zadvydas, 533 U.S. 678 at 693-94 (2001)).

The Due Process Clause applies to noncitizens in the country in connection with removal proceedings, even if their presence is unlawful or temporary. See Zadvydas, 533 U.S. at 693; Andriasian v. Immigr. and Naturalization Servs., 180 F.3d 1033, 1041 (9th Cir. 1999) ("Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process."). This right to due process applies equally to the initial removal determination and determination of removal withholding relief to an identified third country. Johnson v. Guzman Chavez, 594 U.S. 523, 557 (2021) (Breyer, J., dissenting) ("[A]ll here agree that the aliens are legally entitled to seek [] withholding-only relief."); A.A.M., 2025 WL 3485219 at *11 ("Due process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator.").

Joining numerous other courts, the undersigned finds that ICE's policy for third-country removals is incompatible with Ninth Circuit law and violates due process because it currently provides little to no notice of the country to which a noncitizen is to be removed and no meaningful opportunity to raise a fear-based claim. See Vishal v. Chestnut, No. 1:25-CV-01469-SAB-HC, 2025 WL 3511815, at *6 (E.D. Cal. Dec. 8, 2025) (noting "[m]ultiple courts have found the government's third country removal policy violates due process and is contrary to Ninth Circuit precedent" and concurring (citing cases)); Giebashvili v. Noem, No. 25-cv-3432 BJC VET, 2026 WL 114422, at *3 (same) (collecting cases); Nguyen, 796 F. Supp. 3d at 728 ("It

11

would be impossible to comply both with Ninth Circuit precedent and the policy." (citing Andriasian, 180 F.3d at 1041; Aden v. Nielsen, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)); A.A.M. v. Andrews, No. 1:25-CV-01514-DC-DMC (HC), 2025 WL 3485219, at *8 (E.D. Cal. Dec. 4, 2025) ("the court finds Petitioner has a protected liberty interest in having an immigration judge review USCIS's determination on his fear-based claim regarding removal to [a third country].").

The undersigned further finds that "the risk of removal without due process itself constitutes a concrete injury," Daneshfar v. Facility Adm'r, No. C25-1708 DGE MLP, 2025 WL 4037745, at *3 (W.D. Wash. Dec. 16, 2025); Esmail v. Noem, No. 2:25-cv-8325 WLH RAO, 2025 WL 3030589, at *5 (C.D. Cal. Sept. 26, 2025), and that actual removal without notice or meaningful process is an injury that cannot be remedied once removal occurs, see Louangmilith v. Noem, 808 F. Supp. 3d 1139, 1145 (S.D. Cal. 2025) (once a noncitizen is removed without notice or opportunity to be heard "it will be too late for the individuals to meaningfully challenge the removal"). The undersigned finds that Petitioner is therefore entitled to relief on this ground and will recommend that Respondents be enjoined from removing Petitioner to a third country without first providing adequate notice and an opportunity to raise a fear of removal.

Thus, the undersigned will recommend that, if Respondents seek to remove Petitioner to a third country, Respondents and their officers, agents, servants, employees, and persons acting on their behalf in concert or in participation with them, be enjoined from removing Petitioner via a third-country deportation to any country, without providing him and his counsel meaningful notice and opportunity to assert a fear-based claim for relief from removal: (1) A minimum of ten (10) days to raise a fear-based claim for relief from removal to the identified country; and (2) if Petitioner does assert a fear-based claim for relief from removal, Petitioner may not be removed to the third country without first providing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process.

///

///

///

12

## III. CONCLUSION

Based on the foregoing, the undersigned recommends:

1.    It is RECOMMENDED that Petitioner's petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2.    It is RECOMMENDED that Respondents be ordered to provide this Court with evidence within 30 days of the District Judge's order that Petitioner was provided notice of where he will be removed, the necessary procedural safeguards as to third country removal, if Respondents seek to remove Petitioner to a third country, and that Respondents have requested the required travel documents to effectuate Petitioner's removal.

3.    It is RECOMMENDD That, if Respondents are unable or unwilling to provide such evidence to this Court within 30 days, Respondents be ordered to immediately release Petitioner.

4.    It is RECOMMENED that Respondents and their officers, agents, servants, employees, and persons acting on their behalf in concert or in participation with them, be enjoined from removing Petitioner via a third-country deportation to any country, without providing him and his counsel meaningful notice and opportunity to assert a fear-based claim for relief from removal: A minimum of ten (10) days to raise a fear-based claim for relief from removal to the identified country;

5.    It is RECOMMENED that if Petitioner does assert a fear-based claim for relief from removal, Petitioner may not be removed to the third country without first providing him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam)

13

(stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 27, 2026

_____

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

14